# JOHN R. HAMMOND & GEORGE B. JUDD, *vs.* THERON BARNUM.

The St. Louis court of common pleas has not jurisdiction of actions, instituted under the act of 1843, to enforce "liens of mechanics in the city and county of St. Louis."

ERROR TO ST. LOUIS CIRCUIT COURT.

## STATEMENT OF THE CASE.

Hammond & Judd, brought an action of ejectment against Barnum, for a lot in St. Louis. The suit was tried by a jury on the general issue    On the trial the plaintiff read in evidence a record of a lien filed in the clerk's office of St. Louis county, in favor of the plaintiffs, against one Nathan L. Milburn, and covering the property in question. The lien was filed 10th July 1847 and arose out of an account for building materials. The plaintiffs then read a transcript of suit, judgment and execution in St. Louis court of common pleas, in favor of the plaintiff, against Nathan L. Milburn. This suit was a common action of assumpsit, and the account on which it was brought and for which judgment was rendered, was proved by a witness to be the same which was filed as a lien as stated above. The writ of execution was a special *fi-fa* against the property described in the lien (and being the lot in question) reciting the lien and ordering a sale. The plaintiffs then proved a sale by the sheriff under the execution and a deed to the plaintiffs of the property in question. These were in common form. Plaintiffs also proved that the account filed as a lien was just, and that the lumber therein charged was furnished and used for building on the premises in question. The suit in St. Louis court of common pleas was commenced 12th August 1847, judgment rendered 30th Nov., execution issued 31st December 1847, sale advertised 21st January 1848, sale 11th February, and deed by the sheriff dated 12th February 1848. Plaintiffs then proved that Nathan L. Milburn was in possesion of the property in question from Christmas 1846, till November 1847, and built a carpenter's shop upon it, that while in possession he claimed to be owner, that he read to witness a paper by which it appeared that he Milburn was to pay $600 in one year, and $1,500 in six years. That the $600 was paid, and that Milburn had the sole possession during the time above stated. Plaintiffs then proved that the records of St. Louis county recorder's office had been searched, and no lease or other title paper to Milburn was found on record. The possession of the defendant at the date of the ejectment suit, was admitted before the jury.

Such was the plaintiff's case.

The defendant then read an admission to the effect that the property in question was owned by J. H. Lucas on 9th August 1844.    He then read a deed of the lot from Lucas and wife to Josephus W. Hall, dated 10th August 1844, and another deed from Josephus W. Hall and wife to defendant dated 10th August 1847.    The last deed was acknowledged 29th September, 1847 and recorded the same day.    Defendant also proved that after Lucas died, Hall went into possession of the lot, and that he told witness that Milburn was his tenant or in possession under him, witness could not say exactly how.    This was all the defendant's evidence.

The plaintiffs asked the following instructions:

"If the jury find that the carpenter's shop, for which this suit is brought, was built by Nathan L. Milburn with the knowledge of the proprietor of the ground, or that such proprietor permitted said Milburn to take possession of the ground and erect such shop with his consent, then said shop and the ground belonging to it are liable to a lien for materials furnished for the building in the same manner as if Milburn were himself the proprietor of the ground."

"If the jury find that Milburn was a tenant of Hall, of the ground on which the shop was built, and that no lien from said Hall or to said Milburn was on record in the recorder's office of St. Louis county, the ground on which said shop was built was liable to liens incurred in building said shop."

These instructions were refused by the court, and the plaintiff took exceptions.

The court then on defendant's motion, gave this instruction:

"The deed from sheriff Conway to the plaintiffs, given in evidence by them, passed no title to the plaintiffs to the premises described in the declaration in this case."

To the giving of this instruction the plaintiffs excepted. The plaintiffs then submitted to become non-suited.

The usual motion to set aside the non-suit was made and overruled and exceptions saved.

The case is brought to the supreme court by writ of error.

FIELD for plaintiffs in error.

1st. With reference to the lien law of 1843,

The court below decided that the court of common pleas had no jurisdiction of a suit brought to enforce a lien under that law, and consequently that the judgment, execution and sale under which the plaintiffs claimed were merely void.

But the Revised laws 1845, expressly give the common pleas concurrent jurisdiction with the circuit court *in all civil actions.* Rev. laws, 1845, p. 315.

This provision is contained in an act specially applicable to St. Louis county, and satisfies the requirement contained in sec. 22 cap. 101, Rev. laws 1845, p. 699.

There is nothing in the nature of the proceedings under the act of 1843, inconsistent with the jurisdiction of the court of common pleas. The proceedings throughout are those of an ordinary action, and the objects of filing the lien in the clerk's office of the criminal court is under the act of 1843, to give notice to parties interested.

2nd. Without reference to the lien law,

There was a regular judgment in assumpsit in the court of common pleas, an execution, sale &c. That reference to a lien filed in the award of execution is mere surplusage.

At most this reference could only make the execution erroneous, certainly not void, and errors or irregularities in the proceedings cannot affect the title of a purchaser. Jackson vs. Roswelt, 13 J. R. 97; Jackson vs. Baillott, 8 J. R. 361; Woodcock vs. Burnett, 1 Cow. 641; Milburn vs. Ray, 11 Mo Rep.; Perp'l. Ins. Co. vs. Ford, 11 Mo. Rep.

POLK for defendant.

1st. The court of common pleas had no jurisdiction in the matter of lien in the case of Hammond & Judd vs. Nathan L. Milburn (the record of which was given in evidence by plaintiffs,) and no right to enforce a lien under the mechanics lien law, in said case, by ordering a special *fi-fa* against the property described in the record of the lien given in evidence by the plaintiff. Session acts of 1842, 3 p. 83; Code of 1845, p. 699, sec. 22.

By the above mentioned acts of the legislature the circuit court only, has jurisdiction of demands under the mechanic's lien law. Jurisdiction is not given by the act establishing the court of common pleas to that court. Code of 1845, p. 315 sec. 2.

By code of 1845 p. 699, sec. 22, "All acts and parts of acts specially applicable to the city or county of St. Louis, and in force at the commencement of that session of the legislature, and not repealed or modified by some act of that session specially applicable to said county or city were continued in force. Now the act of 1843 (see acts of 1842-3, p. 83,) is in the highest sense specially applicable to the county of St. Louis. But the act of the General Assembly establishing the court of common pleas, is not specially applicable to the city

or county of St. Louis, in the sense of the last named act. It establishes a court in the county of St. Louis, it is true, but it is no more specially applicable to the county of St. Louis than is the act making the county of St Louis the 8th judicial circuit.

Again the jurisdiction of the court of common pleas is well nigh co-extensive with that of the circuit court. See Code of 1845, p. 315, sec. 2. It has concurrent original jurisdiction in all civil actions at law with the circuit court. By sect. 8, p. 316, of code of 1845—practice, process and proceedings, same as in circuit court. By sects. 3 and 4, change of venue provided for from circuit court to common pleas, and from common pleas to circuit court. By sect. 20, judge of common pleas has same powers as judge of circuit court. Its jurisdiction, therefore, is not confined to the county of St. Louis any more than is the jurisdiction of the circuit court; but is co-extensive in the circumference of its extent with that of the circuit court.

This act, therefore, does not vest jurisdiction of cases under the mechanics lien law in the court of common pleas.

2nd. The lien of Hammond & Judd did not attach under the mechanics lien law until the 12th August, 1847, the date of the commencement of this suit against Milburn as against said Milburn. See code of 1845, p. 735, sec. 7; Milan et al. vs. Braffee, 6 Mo. 637.

This is true notwithstanding the 6th sect. of the act, 1843, (acts of 1842-3, p. 84.) For this act merely fixes the priority of the mechanics lien in respect to other incumbrances, but does not claim to fix the date at which the lien attaches, as between the mechanic and his debtor. This is left to the code of 1845 as above cited.

But before the 12th August, 1847, when Hammond & Judd commenced their suit against Milburn, the land on which the shop was erected, had been conveyed to defendant Barnum; that is to say, on the 10th of August, 1847. See record, p. 15.

3rd. The sheriff could have sold and conveyed, under the execution in favor of Hammond & Judd vs. Milburn, only such interest in the premises on which the lien was filed as Milburn had therein. In other words, he cannot have sold or conveyed a greater interest in the premises than said Milburn ever had in them.

It being always borne in mind, in this case, that the record does not show that there was any assent ever given by Hall, the owner of the fee in the land to the erection of the shop. See code of 1845, p. 733; Session acts of 1842-3, p. 83; Milan et al. vs. Braffee adm'r. 638; Carson's lessees vs. Benoist, 2 Wash. C. C. R. 33.

In the case in Pennsylvania (9 Watts 52) it appeared that the owner of the fee assented to the erection of the building by the man in possession of the lot; but such is not the fact in this case. And for the truth of this, I refer to the bill of exceptions in this case.

But that such assent is necessary even in Pa., in order that the lien and the proceedings to enforce the same should affect the interests or estate of others than the person contracting the debt, is apparent from the case of Anshutz vs. McClelland, 5 Watts, 490.

And the same principle is established in the case of Spillman vs. Shunck et al., recently decided by this court and not yet reported. For in this last named case, the owner of the fee knew and consented to the doing the work, and was often present while the work was going on.

The act of 1842-3 (see acts 1842-3, page 83, sec. 1) gives liens to persons whether employed by the owner, contractor, or sub-contractor. And the 2nd sect. of the act provides for cases where a lessee of premises procures work to be done upon them, and enacts that in this class of cases, nothing but the leasehold interest shall be bound by the lien, except where the landlord omits to file his lease for record, in which case, as a penalty for his neglect, the lien is allowed to attach to more than the leasehold interest of the lessee.

But when the owner of any other estate in the land upon which the work is done, procures the doing of work or furnishing materials, the lien attaches only upon such estate or interest in the land as such employer may have therein; upon the fee, if he owns the fee, but only upon a life estate, if he owns no more than a life estate. But the statute provides that when the

party doing the work is employed by the *agent* of the *owner*, that then the lien may attach. That is, if the owner of the fee, for instances, should constitute the owner of a less estate or a contractor, his agent for the purpose of having the work done, in such case the lien shall fasten itself upon the fee. As in case the fee simple owner should know and consent to the doing of work by persons employed by a contractor, or by the owner of a life estate in the land.

Any other principle would enable one man, and he a stranger, to encumber the estate of another without his knowledge or consent.

Now that the record shows that Milburn had no title whatever, he had merely a naked possession, which was extinguished immediately upon the execution of the deed by Hall to Barnum. As against Barnum, who purchased the full title from Hall, he had no title at all, and consequently he had no interest in the land to be conveyed by the sheriff's deed.

4th. No person who has not made a contract with the owner of the land or his agent, can avail himself of the benefit of the lien law, unless he has given notice within 30 days after the indebtedness occurred, or the completion of the building, that there is a certain amount due thereon, and that he intends to hold the building until it is paid. A copy of which notice must be filed with the lien. See acts of 1842-3, p. 83, sec. 3.

In this case no such notice was given. See bill of exceptions. And Milburn was not the owner of the land in the sense of the statute.

5th. If the court was right, as it is contended it was, in giving defendant's instructions, it also follows that it was right in refusing the instructions prayed by plaintiffs counsel.

But these instructions were properly refused, because there was no evidence before the jury on which to predicate them. For this I refer to the bill of exceptions. Where does it appear in the bill of exceptions in this case that Hall, who was the owner of the land at the time Milburn built the shop on it, ever consented or ever knew that the shop was being erected?

So, likewise, there was about as little to justify the second instruction prayed by plaintiffs counsel. The 2nd of plaintiffs instructions ought not to have been given for another reason. It proceeds upon the supposition that there was a lease from Hall to Milburn of the land on which the shop was erected. But by the 3rd sect. of the act of '43, (see acts of 1842-3, sec. 3) in such case the person doing work or furnishing materials, cannot avail himself of the benefit of the lien law, unless he shall give notice to the owner within 30 days after the indebtedness accrued, or the completion of the building, that a certain amount is due him, and that he means to hold the building therefor.

6th. It is claimed in this case that although the plaintiffs in this case may not be able to claim any thing under their lien, yet that the judgment and execution they gave in evidence must operate as an ordinary general judgment and execution, and as such, passed Milburn's interest in the premises. To this, I answer, that Milburn had nothing more than a mere naked possession of the premises, And this possession terminated on the —th of Nov. 1847. But the execution, under which it is claimed his possession was sold, was not issued until the 31st day of December 1847, and the sale did not take place until the 11th of February 1848. Thus at the time of the issuing the execution and of the sale upon it, Milburn had no interest whatever in the premises, and of course, nothing could have been conveyed by the deed from the sheriff.

But even suppose that Milburn had more than a mere naked possession of the premises—that he was there upon an agreement of purchase from the proprietor—that he had an *equitable* interest in the premises; and that such interest passed to plaintiffs by the sheriff's deed to them. Still the deed from the sheriff passed no title to plaintiff upon which they could maintain this action. For an act of ejectment cannot be maintained in this state upon an equitable title of this kind. See code of 1845, title ejectment. Therefore, through the instruction of the court (on this hypothesis)—"that no title passed by the sheriff's deed"— is broader than it need have been, yet the plaintiff suffered no injury by its being thus broad. For if the instruction had been that the deed passed no title upon which an action of ejectment (this ac-

tion) could be maintained, it would still have defeated the plaintiffs. And taking the instruc-tions in reference to the case before the court, the instruction given was but tantamount to this. It included this one.

The sheriff levied on and sold and deeded the carpenters *shop* and not the *premises*,—the *lot.* But the ejectment is not for the *shop* merely, but also for the *lot* on which the shop stands.

7th. In the case of McDermot vs. Doyle decided by this court recently and not published, this court held that a suit on a bond given in an action of detinue, in the circuit court, to the sheriff, must be brought in the circuit court and cannot be brought in the common pleas court,—because the action on the bond was a continuance and part of the first action. So here the party filed his lien in the circuit court—the commencement of the proceedings is in the circuit—and the enforcement by action is in the common pleas.

RYLAND, Judge, delivered the opinion of the court:

The principal question in this case, depends on the jurisdiction of the court of common pleas, in actions to enforce a mechanic's lien in the city and county of St. Louis.

The only doubt I entertained on this question was as to the continu-ing in force of the act of the legislature, respecting mechanics liens in the city and county of St. Louis, passed at the session of the general assembly in 1842 and 3. See the act for the better securing of mechan-ics and others erecting buildings or furnishing materials for the same, in the city and county of St. Louis. Pamphlet acts. Session 1842 page 83 ; and this doubt has yielded to a decision of this court. In the case of Gaty, McCune and Glasby vs. Brown and others, 11 Mo. Rep. page 141, this court unanimously decided, that the above mentioned act is preserved and continued in force by the 22nd section of the act con-cerning revised statutes. Rev. Code 1845 page 699.

I feel unwilling to disturb that decision. By the above mentioned act of 1842 and 3, the *suit in all cases when the amount is over* $90; *shall be brought in the circuit court.*

This court decided, that a scire facias to enforce a mechanic's lien could not be maintained in the court of common pleas, see the above cited case of Gaty, McCune and Glasby vs. Brown and others, and al-though that decision does not reach this question, for the Judge in de-livering the opinion says, this question is not raised in that case. Yet it is impossible to withdraw this question from the principle embraced within that decision, what is a proceeding by scire facias to enforce a mechanic's lien, but a civil suit ? It cannot be pretended, that the lien filed is a record of the circuit court, and therefore a scire facias may well issue on it as such record in that court and in no other. By the act of 1842 and 3 the party having the lien may enforce it by scire fa-

cias or by any other civil action : as the act is silent as to the form of suit or proceeding leaving it to the party's option. Then the same reasoning which deprives the court of common pleas of the jurisdiction of the remedy by scire facias, will deprive it of the remedy by assumpsit or other common law action. And the party must enforce his lien by suit in the circuit court.

The lien being required by law to be filed in the office of the clerk of the circuit court; the legislature may have deemed it most prudent and wise to require the action to be brought in that court, and in none other.

Under this view of the law, then, the instruction given by the court below for the defendant is correct and those asked for by the plaintiffs properly refused. The judgment of the court is therefore affirmed.